ABBOTT v. S. B. & B. W. FLEISCHER, Inc.

(District Court, E. D. Pennsylvania. November 11, 1914.)

No. 2756.

SALES (§ 88*)—CONTRACT FOR SALE OF WOOL—ACTION FOR BREACH—QUESTIONS FOR JURY.

In an action for breach of a parol contract by which plaintiff undertook to obtain and to sell to defendant wool of different grades and at different prices, the question what the contract as agreed upon was *held* properly submitted to the jury as determinative of the rights of the parties under the issues.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 248–250; Dec. Dig. § 88.*]

At Law. Action by J. H. Abbott against S. B. & B. W. Fleischer, Incorporated. On motion by defendant for new trial. Denied.

Brown & Lloyd, of Philadelphia, Pa., for plaintiff.

J. W. Bayard and F. P. Prichard, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The reasons for a new trial which are now urged and remain to be disposed of are these:

1. Exception is taken to a part of the charge. The exception relates to a portion of the charge found on page 286 of the stenographer's notes. Separated from its context, the observations here made would

seem to have no relevancy to the issue to be determined by the jury. The thought was this: The jury had been asked to find the contract, because what it was could be found only from the oral testimony, or the oral testimony supplemented by letters which the parties had interchanged. The letters were hardly more than memoranda of quantities and prices which had been agreed upon. The wool may, in a general way, be described as consisting of two qualities, medium wool, which was the higher priced wool, and fine wool, or what was also included under the general designation of rejections. The quantity of wool embraced in the contract was agreed upon, but there was no distribution of it between the two kinds or qualities. A price had been agreed upon for medium wools, and another price for rejections; but here again there was no agreement as to quantity with reference to the respective prices. Quite a little talk had taken place between the parties, and some questions had been raised about the grading.

The final position of the defendant as to this was that it had been agreed that the wool was to be sorted by defendant's grader, but, if the grading was not satisfactory, the bargain should be off. The final position of the plaintiff was that the defendant had agreed that the grading should be fairly done. The parties knew the conditions under which they were bargaining. These were that neither party knew anything of the wool as to which they were contracting. The expectation was that the plaintiff would go out among the farmers of Western New York and get the wool which the defendant had agreed to take. A schedule of dates and places was arranged between them, constituting an itinerary for the plaintiff and the defendant's grader. At the first place at which they met, at least two questions and two differences arose between them. The plaintiff had gathered a quantity of wool which the farmers had brought to the place thus first designated. There was in quantity approximately 30,000 pounds. The grader graded. The result of this grading was that he graded it as 14,000 pounds of medium wool and 16,000 of fines or rejections. The plaintiff was dissatisfied with and refused to accept of this grading. The meeting finally broke up, with the situation being, according to the plaintiff, that he tendered the 14,000 pounds of medium wool, and offered to deliver the remaining quantity out of the wool which would be found at one or more of the subsequent places of visit arranged for. This would have kept him well within the time limit of his contract. The plaintiff was unwilling, and refused to tender the 16,000 pounds of rejections, claiming that there was much medium wool among it. He did offer, but this was by way of a compromise of the dispute, to regrade the 16,000 pounds himself, take out of it what he considered medium wool, and deliver the remainder as fines or rejections.

In order to understand the defendant's version of conditions when this first meeting broke up, this should be added to the statement already made: While the quantity of wool had been agreed upon and prices had been named, 47,000 pounds were to be at certain prices, and the remainder at higher prices. The prices were 22 cents and 24 cents for medium wool and 17 cents and 18 cents for rejections. The defendant's version is that the plaintiff demanded 24 cents for the me-

dium wool, which the defendant refused to allow. The defendant further insisted on its right to take the whole lot of wool, medium and fine, at the prices named, and refused to take the medium wool by itself. As the plaintiff refused to deliver the medium wool, except at 24 cents, and refused to deliver the fine wool at all, the defendant declared a breach of the contract by the plaintiff, and all further dealings were off.

To complete this statement of facts, it should be stated that the plaintiff's version is that, although he did at first ask 24 cents for his medium wool, when the defendant insisted upon his right to take the first wool offered at the lower price, the plaintiff acquiesced in this, and then made a positive formal tender of medium wool at the 22-cent price.

Under all the facts in the case, and the circumstances and conditions under which the parties dealt, the court had submitted to the jury to find what the contract was, with respect to whether it was in the alternative for the medium wool at its price, or fine wool at its price, or part of one and part of the other, or whether the contract contemplated the plaintiff supplying and the defendant accepting what has been termed the crop of the wool as it came from the farmers to be paid for, the medium part at one price, and the fine wool part of it at the other price, and what was medium and what was fine to be determined by a grading. If the latter were the contract, it is obvious that the grading affected only the price, and that each party was really bargaining for what might be called a price for the whole lot, or, as another way of expressing the same thing, an average price per pound. The determination of this question, of course, had a very important bearing upon the other question of the willingness of the parties on the one hand to tender, and on the other hand to accept, the whole lot of wool, or only the separate parts of it. One of the possible versions of the contract was that the plaintiff should be bound by the defendant's grading. Another was that in the event of a disagreement the contract should automatically end. Another was that the grading should be a fair grading. Still another was that the contract was entirely silent as to the grading.

It was necessary for the court to charge the jury as to what they should do in the event of their finding the contract in this respect to be any one of the contracts just above mentioned. It was, therefore, necessary to instruct the jury what would follow their finding that there was nothing in the contract about the grading; but there was the element in the contract that the parties were bargaining for the whole crop. The part of the charge to which this exception is directed dealt with this aspect of the case, and the jury were told that in the event of the contract being to buy the whole crop, medium and fine, and there being nothing in the contract as to the grading, the question of whether the plaintiff was bound to tender the 16,000 pounds of fine wool depended upon the fact of whether it was really fine wool or whether there was an admixture of medium wool. This came down to the question of whether the grading had been honestly and properly done. The part of the charge quoted for exception

is therefore the introduction to the part which immediately follows, which should be read with it.

We are not convinced there was any error in this. The plaintiff had a very aggressive version of the contract—that under it it was his right to tender either medium wool or fine wool up to the named quantity, and that the defendant was bound to accept it, provided only it was the quality of wool for which the price called. The defendant just as aggressively insisted upon its version of the contract, namely, that it was entitled to the whole crop of wool, and that the defendant was not obliged, after the wool was graded, to pay for the part which the plaintiff was willing to sell, and not get the other part. In the expressive phrase of counsel, the defendant was to take and pay for the wool which was graded, and its grader was not sent up into New York to grade wool which the plaintiff might thereafter sell to somebody else, but was sent there to grade wool which had been contracted to be sold to the defendant subject to the grading.

As these so-called versions and interpretations of the contract are, strictly speaking, different contracts, we see no escape from the conclusion that the jury was required to find which of these two things was the contract in this aspect of it. If the contract was in this respect, as contended for by the defendant, that the plaintiff must tender and the defendant accept the lot or crop of wool as it was presented for grading, then certainly the grading was nothing more than the means of determining the sum which the defendant was to pay for the lot. In other words, the grading bore upon nothing but the price to be paid for the wool. The jury found against the defendant, and the instruction, therefore, was that unless the grading was properly done the plaintiff was not bound to tender the low-priced wool.

2. The defendant also complains of the answer to the defendant's second point. This point asks the court to charge that defendant had the right, if it was to take the wool, to take the whole lot, and was not bound to take a part of it. The answer made to this point was that it depended upon what the contract was. We still think this answer was correct, because if the contract was not for the entire lot of wool as presented for grading, but, for instance, for 47,000 pounds of wool, medium or fine, and wool was tendered which the defendant admitted to be medium wool, then the defendant would be bound to take it.

3. The next complaint is to the answer of the court to the defendant's third point. The affirmance of this point would have been the equivalent of binding instructions, because the undisputed evidence was that the plaintiff's position was as stated in the point. In effect the direction asked for was that the plaintiff was bound to tender the entire lot of wool and not part of it. What has been said above applies with equal force to this.

4. The fourth complaint is directed to the refusal of the court to charge as asked for in defendant's fourth point. This point is in legal effect a reiteration of the third point. The only difference is that the fact upon which the point is predicated is stated inferentially in the fourth point, instead of positively asserted as in the third point. We therefore think it is met by what we have said in respect to point 3.

5. The final complaint is of the refusal of the court to affirm the defendant's sixth point, which asked for binding instructions. We are unable to see anything upon which this point can be predicated, except what has already been discussed with respect to points 3 and 4.

Whatever merit is left in the defense is dependent upon the correctness of the position as assumed and set forth in defendant's third point. There can be no difference of opinion over the fact. The plaintiff limited his tender of wool after the first grading to the part of the wool the defendant had graded as medium, and he refused to deliver as fine the part of the remaining wool graded as fine, because there was much of it which he claimed to be medium wool. If he was bound to tender all the wool, medium and fine, as graded by the defendant, and at the prices named, he committed a breach of the contract, and is certainly not entitled to hold the verdict which the jury has rendered in his favor.

No points were submitted by the plaintiff, but, had there been, the position would doubtless have been taken—must have been taken—that the plaintiff was fulfilling his contract when he tendered wool to the contract quantity and of the contract quality, whether medium, fine, or both. Had the contract been in writing, and had it followed the verbiage of the letters exchanged between the parties, we would have felt constrained to have construed the contract in accordance with the plaintiff's view of it. If this would have been the proper construction of the contract, then no appellate question springs out of this record.

The rule for a new trial is therefore discharged.